# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

---

ANTOINE HINTON

VS.                                                                NO. _____

ACTING WARDEN
TROUSDALE TURNER
CORRECTIONAL CENTER

---

## PETITION FOR WRIT OF HABEAS CORPUS

---

This petition for a writ of habeas corpus is filed behalf of Antoine Hinton, who seeks relief and remedy for his unlawful detention. Respondent is detaining Mr. Hinton by agreement with the Tennessee Department of Corrections.

### JURISDICTION and VENUE

Jurisdiction lies with this Court as Respondent has violated 28USC §2254. Venue lies with this Court as Respondent resides in the Middle District of Tennessee and Petitioner is detained here.

### PARTIES

Petitioner is a citizen of Tennessee currently incarcerated at the Trousdale Turner Correctional Center. Vince Vantell is the warden supervising the Trousdale Turner Correctional Center.

## EXHAUSTION OF REMEDIES

Petitioner was charged with First Degree Murder, Especially Aggravated Kidnaping, Aggravated Kidnaping, Aggravated Assault, Employing a Firearm during Aggravated Kidnaping in Shelby County Circuit Court. Trial was had on April 23-27, 2018 ending with a jury verdict of guilty of First Degree Murder, Especially Aggravated Kidnaping, Aggravated Kidnaping, Aggravated Assault, Employing a Firearm during Aggravated Kidnaping. The jury sentenced Petitioner to life without parole. Petitioner was also sentenced to 28 years incarceration for the remaining charges on September 27, 2018.

Appeal of right was made to the Tennessee Court of Criminal Appeals. The Court issued opinion on March 19, 2020 denying Petitioners claims. Petitioner then submitted writ of ceriorari to the Tennessee Supreme Court, which was denied. Petitioner submitted a petition for post-conviction relief, which was heard, then denied by order dated August 17, 2022. Petitioner filed appeal to the Tennessee Court of Criminal Appeals, which denied the claim on December 8, 2023. Thereafter Petitioner sought relief by writ to the Tennessee Supreme Court, which was denied May 16, 2024.

There are no further legal remedies with the courts of the State of Tennessee.

## STANDARD OF LAW

The State of Tennessee courts' adjudication of Petitioner's claims resulted in a decision contrary to clearly established federal law.

STATEMENT OF FACTS

Antoine Hinton was indicted on December 22, 2016 by a Shelby County grand jury for First Degree Murder of Jeremy Lampkin, Especially Aggravated Kidnaping of Kaili Taylor, Aggravated Kidnaping of Kaili Taylor, Aggravated Assault of Kaili Taylor, and Employing a Firearm During an Aggravated Kidnaping. At trial on April 27, 2018 Antione Hinton was convicted of felony murder and of all other charges. A motion for new trial was filed, heard and denied.

On the incident date of August 16, 2015 Kaili Taylor and Antione Hinton had been involved in an intimate relationship for five years. On the morning of August 16, 2015, while at the apartment of Ms. Taylor, Mr. Hinton discovered text messages that led him to believe Ms. Taylor was involved in an intimate relationship with another man, Jeremy Lampkin. Mr. Hinton confronted Ms. Taylor about the text messages and demanded to know details of her affair. Mr. Hinton did not believe the answers given by Ms. Taylor and began to act violently and irrationally. He then texted Jeremy Lampkin from Ms. Taylor's phone askin him to come over to her apartment.

Mr. Hinton questioned, threatened, and beat Ms. Taylor over the course of three to four hours. He drove her across town to his own apartment and back to Ms. Taylor's apartment for unknown reasons. Once back at Ms. Taylor's apartment, Jeremy Lampkin arrived at Ms. Taylor's apartment. An argument ensued between Mr. Lampkin and Mr. Hinton.

Ms. Taylor used this argument as opportunity to leave the apartment and seek help. Testimony from eyewitnesses state that they saw ms. Taylor run out of the apartment in a state of undress and covered in injuries. Testimony from Ms. Taylor and from eyewitnesses state that shots were fired after Ms. Taylor was free from harm.

CLAIMS FOR RELIEF

1. Petitioner's Constitutional right to counsel was denied.

A. Petitioner's pre-indictment counsel negligently advised Petitioner to confess to the alleged crimes shortly following the incident and arrest.

Petitioner contacted his attorney, Samuel Perkins, immediately upon arrest. Petitioner invoked has Mirand right to silence. The attorney arrived at the police station, conferred with Petitioner, conferred with investigating detective, and then advised Petitioner to confess. No advise to calm and collect himself was given. No plea discussions were had with a member of the District Attorney's Office. When Petitioner gave his statement their was nothing in place to ensure Petitioner's best interests. By the date of the post-conviction hearing the attorney had passed away.

Mr. Perkins was a close friend of one of the victims in this case. A conflicti of interest 'includes any circumstances in which an attorney cannot exercise his independent judgement' free of competing interests. *State v. Culbreath*, 30 S.W.3d 309, 312 (Tenn. 2000); see also *State v. White*, 114 S.W.3d 469, 476 (Tenn. 2003). A conflict of interest can only be waived by

4

voluntary written informed consent. *McCullough v. State*, 144 S.W.3d 382, 385 (Tenn.Crim.App. 2003). No waiver was executed. Prejudice caused by a conflict of interest is presumed unless the court engages in an inquiry of the nature of the conflict and takes appropriate measures. *Frazier v. State*, 303 S.W.3d 674, 683 (Tenn. 2010). Mr. Perkins took the remarkable step of advising a client to confess to murder absent any plea agreement or other benefit, all while Mr. Perkins had ties to a victim's family.

B. Trial counsel failed to request a crucial jury instruction.

The Tennessee Supreme Court held in *White* that "trial courts must ensure that juries return kidnaping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony". *State v. White*, 362 S.W.3d 559 (Tenn. 2012). The Court then created a jury instruction for this purpose:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
> 1. The nature and duration of the victim's removal or confinement by the defendant;
> 2. Whether the removal or confinement occurred during the commission of the separate offense;
> 3. Whether the interference with the victim's liberty was a inherent in the nature of the separate offense;
> 4. Whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
> 5. Whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

> 6. Whether the removal or confinement created a significant danger
> or increased the victim' risk of harm independent of that posed by
> the separate offense.

In this case trial counsel failed to request this instruction and the trial court failed to give the jury this instruction. Trial counsel also failed to include this error in the Petitioner's motion for new trial. On appeal the issue was raised and the Tennessee Court of Criminal Appeals held this was error, but found the error to be harmless.

When an issue is not raised in a defendant's motion for new trial, the standard of review rises to a high standard of plain error. It then is required that the error be "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding". *State v. Martin*, 505 S.W.3d 492 (Tenn. 2016). Tennessee and United States Constitutions require a conviction to be based upon proof beyond a reasonable doubt as to every element of the charged offense. *U.S. Const. Amends* V, XIV; *Tenn. Const. Art. 1§8*. A defendant has a right to a "complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions". *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011). The Tennessee Supreme Court has held that, "the legislature did not intend for the kidnaping status to apply to the removal or confinement of a victim that is essentially incidental to an accompanying felony, such as rape or robbery" *State v. White*, 362 S.W.3d 559, 562 (Tenn. 2012). Failure to give this instruction to a jury is constitutional error unless it harmless beyond a reasonable doubt. *Statre v. Teats*, 468 W.W.3d 495, 502 (Tenn. 2015).

In this case Petitioner was convicted of committing kidnaping and aggravated kidnaping on the same individual. He was also convicted of aggravated assault of that individual. The kidnaping conviction served as the predicate offense for a felony murder conviction. Had the jury received the proper jury instruction, they would likely have not found defendant guilty of the predicated offense necessary for felony murder. Application of the *White* factors would have removed the nexus for a felony murder conviction. Counsel's failure to request this jury instruction at trial and raise it in the motion for new trial deprived defendant of his constitutional right to counsel.

Death does not need to be in furtherance of the felony for a conviction for felony murder, but the act causing the death must be in furtherance of the felony. *U.S. v Martinez*, 16 F.3d 202 (7th Cir. 1994). In Tennessee the felony murder rule does not include cases in which there is no intent to commit the felony at the time of the killing. *State v. Buggs*, 995 s.W.2d 102 102, 108 (Tenn. 1999). The death of Jeremy Lampkin occurred after the kidnaping victim, Kailli Taylor, escaped the apartment where she had been confined.

2. Petitioner was denied his right to a fair trial and the ability to impeach a prosecution witness.

Petitioner requested exculpatory evidence and written notice of impeaching conduct during pre-trial discovery. The Prosecution failed to inform Petitioner's counsel of important impeachment evidence regarding the prosecution's lead investigator. This may also have led to exculpatory evidence.

7

Lieutenant Eric Kelly of the Memphis Police Department Homicide Division was investigated by law enforcement beginning in 2018. Petitioner's trial was heard in April, 2018. Petitioner was not informed of the investigation by the time of trial. Nor was he informed of the investigation during his appellate process. By the time of Petitioner's post-conviction case the investigation was not included as part of the court record and it was not then requested for inclusion. This violation has not been previously raised in this case history.

> Kelly was accused of having a sexual relationship with a homicide suspect he was investigating in 2018. Documents uncovered by WREG show he admitted to getting marijuana for the woman, and gave her more than $2,000 during their relationship as she became a stripper at the Gold Club. The district attorney's office also said Kelly used city funds to take the woman out of town with him on an investigative trip.

*WREG.com.* Ex-officer's misconduct charge wiped off record by: Jessica Gertler. Posted: Sep 21, 2022 / 11:33 AM CDT, Updated: Sep 21, 2022 / 05:19 PM CDT.

> Kelly was under fire for having a sexual relationship with Bridgett Stafford, an admitted member of the Gangster Disciples, while he was investigating her involvement in a murder. Stafford was charged as an accessory after the fact after a man's body was found nude, beaten and bound in a dumpster in 2017. "The two also exchanged text messages, which were detailed in the files. In one conversation, Kelly apparently told Stafford where she could buy marijuana. Kelly denies that ever happened. In another text exchange, Kelly encouraged Stafford to become a stripper. She said he helped her get a job at the Gold Club and even picked her up from work in a marked squad car. Kelly later told investigators he didn't encourage her to become a stripper but "encouraged her to do the best she could with it." Copies of money transactions show Kelly sending Stafford thousands of dollars through Cash App. She claims she spent it on things like outfits for the strip club and marijuana."

*WREG.com.* Police files shed new light on ex-MPD officer's affair with suspect by: Jessica Gertler. Posted: Feb 3, 2020 / 04:31 PM CST, Updated: Feb 3, 2020 / 04:31 PM CST.

> "He [Kelly] pleaded guilty to one misdemeanor count of official misconduct and received judicial diversion." Kelly completed the probation and the conviction will be expunged. Lieutenant Kelly retired from the Memphis Police Department in 2019.

Memphis Commercial-Appeal, Sept. 24, 2023.

Since that time Lieutenant Kelly has been charged with further crimes.

> A retired Memphis Police officer charged with official misconduct is facing new charges, accused by an ex-girlfriend of stalking her. Former Memphis officer in police misconduct case now charged with stalking ex-girlfriend.

*WREG.com* by: Jessica Gertler. Posted: Aug 9, 2021 / 04:14 PM CDT, Updated: Aug 10, 2021 / 07:52 AM CDT

Failure to disclose evidence favorable to an accused upon request violates the *Due Process Clause, U.S. Const. amend. XIV* where the evidence was material to guilt or punishment. *Brady*, 373 U.S. 83 (1963). '[T]he State bears the burden of disclosing all material evidence irrespective of the "good faith" intentions of the prosecution. See *Brady*, 373 U.S. at 87.' *State v. Thomas*, LEXIS 989 (Tenn.Crim.App. 2004). The *Thomas* case dealt specifically with impeachment evidence.

In order to establish a Brady violation, the defendant must prove each of the following four factors by a preponderance of the evidence:

> 1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
> 2. The State must have suppressed the information;
> 3. The information must have been favorable to the accused; and
> 4. The information must have been material.

*State v. Edgin*, 902 S.W.2d 387, 389-90 (Tenn. 1995).

> Exculpatory evidence not disclosed to the defense is material and warrants a new trial when "there is a reasonable probability that the result of the proceeding would have been different had the exculpatory evidence been disclosed."

*Sample v. State*, 82 S.W.3d 267, 270 (Tenn. 2002).

> "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

*State v. Spurlock*, 874 S.W.2d 602, 619 (Tenn. Crim. App. 1993).

Should an examination be ordered by this tribunal it will reveal that the information was unavailable prior to trial, a new trial would still be an appropriate remedy.

> It is true that newly discovered impeachment evidence will not constitute grounds for a new trial, as a general rule. But if the impeaching evidence is so crucial to the defendant's guilt or innocence that its admission will probably result in an acquittal, a new trial may be ordered. State v. Rogers, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985); Rosenthal v. State, 200 Tenn. 178, 185-86, 292 S.W.2d 1, 4-5, cert. denied, 352 U.S. 934, 1 L. Ed. 2d 160, 77 S. Ct. 222 (1956); Evans v. State, 557 S.W.2d 927, 938 (Tenn. Crim. App. 1977).

*State v. Singleton*, 853 S.W.2d 490, 497 (Tenn. 1993).

Evidence presented to the trial jury by the lead investigator in this case is tainted. His behavior beyond this case both before and after the trial was criminal in nature. There is great suspicion that his behavior in this case was also criminal in nature. State and federal law require an examination of this situation and remand for new trial.

## PRAYER

WHEREFORE, Petitioner prays this Honorable Court grant the following relief.

1. Issue an order directing Respondent to show cause why the writ should not be granted.

2. Issue an order directing Respondent to provide a record of State of Tennessee court records to the Court and Petitioner.

3. Issue an order to hear the claims presented herein.

4. Issue a writ of habeas corpus ordering Respondent to release Petitioner from custody.

5. Grant any other relief which this Court deems just and proper.

Respectfully Submitted,

*/s Jeff Mueller*

_____

Jeff Mueller, BPR 17127
Attorney for Defendant
P.O. Box 408
Trenton, TN 38382
731-695-6768

VERIFICATION OF COUNSEL

I, Jeff Mueller, hereby certify that I am familiar with the case of the named petitioner and that the facts stated above are true and correct to the best of my knowledge and belief.

*/s Jeff Mueller*

_____
Jeff Mueller